**ORAL ARGUMENT REQUESTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 3 0 2004
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| ROBERT N. GOLDSTEIN, GOLDSTEIN/HABEEB ENTERTAINMENT, INC., and CHEATERS, LTD., Plaintiffs | § § § § § § |
| vs. | § § |
| TOMMY HABEEB Defendant | § § § |

CAUSE NO. 304CV-677-P

ORIGINAL

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND
REPLY TO DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

**PLAINTIFFS' BRIEF**

---

Submitted By:

Timothy W. Sorenson, Esquire
State Bar No.18848400

1717 Main Street, Suite 5500
Dallas, Texas 75201
Ph: (214) 698-8599
Fax: (214) 698-5999
Attorney for Defendant, Robert N. Goldstein

C:\TWS\Goldstein, Bobby\v. Sorenson\Federal suit\Motions\Brief.wpd

## TABLE OF CONTENTS

**INDEX TO AUTHORITIES**................................................................................. p.ii

**ISSUES PRESENTED:**

    **Does Defendant's representative capacity in the State
Court Action shield Defendant from the preclusive
effect of the Federal Judgment to which he was a party
in his individual capacity?** ...................................................................... p.2

    **Were Defendant's State court claims
compulsory counterclaims in the Federal Action?** ................................ p.4

    **Public policy issue**.................................................................................. p.11

    **Is Sorenson entitled to benefit from the application of *res judicata*?**....... p.12

**PLAINTIFFS' PRAYER FOR RELIEF**.................................................................. p.13

# INDEX TO AUTHORITIES

**Cases:**

*1488, Inc. v. PhilsecIn v. Corp.*, 939 F.2d 1281(5th Cir. 1991)     p.3

*Ake v. Chancey*, 149 F.2d 310 (5th Cir. 1945)     p.4

*Aycock v. Pannill*, 853 S.W.2d 161(Tex.App.-Eastland 1993, writ denied)     p.13

*In re Bridgestone/Firestone, Inc.*, 333 F.3d 763 (7th Cir. 2003)     p.13

*Carle v. Carle*, 234 S.W.2d 1002,(1950)     p.13

*Cleckner, v. Republic Van and Storage Company, Inc.*, 556 F.2d 766 (5th Cir.1977)     p.4

*Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir. 1994)     p.4

*Dillard v. Security Pac. Brokers, Inc.*, 835 F.2d 607 (5th Cir. 1988)     p.4

*Dow Agrosciences, LLC v. Bates*, 5:01-CV-331-C (N.D.Tex. 2003) (Dow II)     p.1,3,11

*Dow Agrosciences, LLC v. Bates*, 205 F. Supp.2d 623 (N.D.Tex. 2003) (Dow I)     p.1

*Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir. 1990)     p.3,5

*Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279 (5th Cir. 1989)     p.3

*Nilsen v. City of Moss Point*, 701 F.2d 556 (5th Cir. 1983) (en banc)     p.5

*N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998)     p.4

*Paine v. Sealey*, 956 S.W.2d 803 (Tex. App.-Houston [14th Dist.] 1997, no pet.)     p.3

*Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978)     p.3

*Quintero v. Klaveness Ship Lines*, 914 F.2d 717 (5th Cir. 1990)     p.2

*Robinson v. National CashRegister Co.*, 808 F.2d 1119 (5th Cir. 1987)     p.5

*Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir. 1984)     p.3

*SouthwestAirlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84 (5th Cir. 1997)     p.3.12

*TexasEmployers Ins. Ass'n v. Jackson,* 862 F.2d 491 (5th Cir. 1988) (en banc),
    cert. denied, 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404(1989)        p.5

*Vasquez v.Bridgestone/Firestone, Inc.,* 325 F.3d 665 (5th Cir. 2003)        p.2

*W. Inn Corp. v. Heyl,* 452 S.W.2d 752
    (Tex.Civ.App.- Fort Worth, 1970, writ ref'd n.r.e.)        p.3


**Other authorities:**

All Writs Act, *28 U.S.C. §1651*        p.2

RESTATEMENT (SECOND) OF JUDGMENTS § 24        p.5

§5.14L(2), Texas Business Corporation Act        p.2

§5.14L(1)(a), Texas Business Corporation Act        p.2

Plaintiffs, Robert N. Goldstein (Goldstein), Goldstein/Habeeb/McCalmont Entertainment, Inc. (GHE) and Cheaters, Ltd. (Cheaters) file this their brief in response to the Defendant's Motion for Summary Judgment and reply to Defendant's response to Plaintiffs' motion for summary judgment, and in support of same would respectfully show the following:

## I.
## Defendant's Motion for Summary Judgment

Defendant erroneously contends that he is entitled to summary judgment because:

1.01 He is suing in the State Court Action only in his representative capacity, derivatively as a shareholder of GHE, but was only sued by Plaintiffs in the Federal Action in his individual capacity; and,

1.02 His claims in the State Court Action were not compulsory counterclaims in the Federal Action.

Defendant's motion is without merit; instead, Plaintiffs are entitled to summary judgment.

## II.
## Plaintiffs' Response to
## Defendant's Motion for Summary Judgment

2.01 Judge Sam Cunningham, in his comprehensive and erudite opinion in *Dow Agrosciences, LLC v. Bates, 5:01-CV-331-C (N.D.Tex. 2003)* (*Dow II*), sets forth a compendium of the law applicable to facts substantially the same as those found in this lawsuit. In the original case, *Dow Agrosciences, LLC v. Bates, 205 F. Supp.2d 623 (N.D.Tex. 2003)* (*Dow I*), the plaintiff, DAS, obtained summary judgment against multiple defendants for declaratory relief in an effort to have the Court determine the parties' rights and obligations under applicable federal law. After the federal suit had been filed but before summary judgment had been

granted, the defendants sued DAS in multiple state courts. After summary judgment was entered, but while the original case was on appeal, DAS filed *Dow II* seeking equitable relief under the All Writs Act, *28 U.S.C. §1651*, permanently enjoining all defendants, and others who were in privity with them, from prosecuting the multiple state court actions against DAS. The relief was granted in *Dow II*. The legal principals in *Dow II* are the same as those raised herein by the Defendant, and a true copy of that opinion is provided herewith as Exhibit "G" in Plaintiffs' supplemental appendix.

2.02 **Does Defendant's representative capacity in the State Court Action shield Defendant from the preclusive effect of the Federal Judgment to which he was a party in his individual capacity?** No! An examination of the summary judgment facts reveals that Defendant is, and was throughout the pendency of the Federal Action, a shareholder in GHE. He was also a director of GHE during the same period. GHE is a closely held corporation as defined by §5.14L(2) of the Texas Business Corporation Act (TBCA). The applicable law in Texas is that a derivative action brought by a shareholder in a closely held corporation may be judicially treated as a direct action brought by the shareholder for his own benefit. §5.14L(1)(a), TBCA. It is well settled that "it is within the discretion of a district court to expand the scope of an otherwise valid injunction issued pursuant to the relitigation exception of the Anti-Injunction Act to include those in privity with parties to the federal court action." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990). Privity is a flexible concept and "has been described as nothing more than a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Vasquez v.Bridgestone/Firestone, Inc.*, 325 F.3d

665, 677(5th Cir. 2003). Federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1997). Factually, Defendant is using the same attorney in the State Court Action as was his attorney in the Federal Action, and Defendant personally signed the Agreed Judgment in the Federal Action. In addition, Texas law recognizes that stockholders of a corporation are in privity with the corporation for *res judicata* purposes. *Dow II, p.44 (citing Paine v. Sealey*, 956 S.W.2d 803, 907 (Tex. App.-Houston [14th Dist.] 1997, no pet.); *W. Inn Corp. v. Heyl*, 452 S.W.2d 752, 760 (Tex.Civ.App.- Fort Worth, 1970, writ ref'd n.r.e.). The shareholder/corporation relationship, therefore, will ground a claim of *res judicata. Lubrizol Corp. v. Exxon Corp.*,871 F.2d 1279, 1288 (5th Cir. 1989). The Fifth Circuit emphasizes that "the word 'parties' does not refer to formal or paper parties, but to parties in interest, that is, that persons whose interests are properly *placed before the court* by someone with standing to represent them are bound by the matters determined in the proceedings." *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990) (original emphasis, quoting *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984). Furthermore, the Fifth Circuit has "repeatedly held that a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *1488, Inc. v. Philsecln v. Corp.*, 939 F.2d 1281, 1290 (5th Cir. 1991). "Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues." *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978). Under these legal principles, the Defendant in his representative capacity in the State

Court Action was "virtually" represented by and in privity with the Defendant, individually, in the Federal Action.

2.03 **Were Defendant's State court claims compulsory counterclaims in the Federal Action?** Yes!

    A.    *Res Judicata*'s claim preclusion principles extend their reach to claims that could have been asserted, but were not asserted, in the original federal proceedings. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879-883 (5th Cir. 1998); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994). The principles of *res judicata* apply to a compulsory counterclaim, and a failure to plead the counterclaim bars a party to a federal judgment from bringing what is otherwise a compulsory counterclaim as a later independent action. *Dillard v. Security Pac. Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988); *Cleckner, v. Republic Van and Storage Company, Inc.*, 556 F.2d 766 (5th Cir.1977; and *Ake v. Chancey*, 149 F.2d 310 (5th Cir. 1945). *Dillard* stresses that causes of action that arise before an answer was filed are barred. In this case, all of Defendant's State Court claims arose before Defendant answered the Federal Action on March 3, 2003 (See Defendant's Appendix, Exhibit A, Factual Background, pp 3-14).

    B.    As stated in Plaintiffs' Brief in Support of Motion for Summary Judgment, the critical issue is whether the State Court Action is based on the same nucleus of operative facts as those on which the Federal Action was based. Under this transactional test the question is whether the claims asserted by the Plaintiff in the State Court Action grow out of the same transaction or series of transactions involved in the Federal Action.

*Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir. 1983) (en banc); *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979, 983 (5th Cir. 1990). In *TexasEmployers Ins. Ass'n v. Jackson,* 862 F.2d 491, 501 (5th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1035, 109 S.Ct. 1932, 104 L.Ed.2d 404(1989). The Fifth Circuit has defined "claim" to include "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Jackson,* 862 F.2d at 501 (adopting definition of RESTATEMENT (SECOND) OF JUDGMENTS § 24). A party may not avoid the preclusive affect of *res judicata* by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal theory posed or recovery sought. *See, Robinson v. National CashRegister Co.,* 808 F.2d 1119, 1124-25 (5th Cir. 1987). This inquiry requires the court to look at the factual predicate of the claims asserted, not the legal theories upon which a plaintiff relies.

C.  In applying the test to this case, one compares Defendant's allegations in Plaintiff's First Amended Original Petition in the State Court (Exhibit 1 to Tab A of Defendant's Appendix) to those of the First Amended Complaint for Damages, Interpleader, and Permanent Injunction in the Federal Action (Tab A, Plaintiffs' Appendix). In the latter, the plaintiffs alleged:

3.04  On or about August 10, 1998, Goldstein granted an exclusive

 license to the original program concept to GHE for the purpose

 of developing and producing a television video tape to be used

 as a pilot for the publication, sale and syndication of the

original program concept. GHE produced the program concept pilot film and published it in October 1998. **(Admitted by Defendant in his Defendant's First Amended Answer, Tab B to Plaintiffs' Appendix).**

3.05   On or about August 25, 1999, with Goldstein's consent, GHE assigned its exclusive license to the program concept to Cheaters for the purpose of developing and producing a television video tape series to be sold, published and syndicated from the original program concept. Cheaters has produced, developed and published sixty one-hour films from the original concept, and is in the process of producing additional television video tapes from the original program concept. The program has been broadcast locally and nationally, is a "hit," and has a substantial audience. **(Admitted by Defendant).**

3.09   On or about November 28, 2001, the License to GHE was revoked for due cause. **(Denied by Defendant).**

3.10   At all time material hereto Defendant was and is a director and minority shareholder in GHE. **(Defendant admitted that he was a shareholder, but denied that he was a minority shareholder).**

3.11 Between April, 1998, and December, 2002, Defendant served as the Host for the published television pilot and the television shows that were developed and published from the original concept duly copyrighted to Goldstein. Defendant was paid and accepted an appearance fee as full compensation for each of his appearances as Host on the television pilot and shows. In connection therewith, Defendant signed a waiver of any and all claims for the use of his image in connection with the show and agreed in advance that his contributions were "works made for hire" within the meaning of 17 U.S.C. § 101. Despite these agreements, Defendant has, from time to time, asserted an ownership interest in these properties, both to Goldstein and to third parties.( **Defendant admitted he was the host and had asserted an ownership in the property, but denied the remaining allegations.**)

5.03 Defendant has breached and continues to breach his fiduciary duty to GHE by usurping corporate opportunities and property to his own account and for his own benefit. **(Denied by Defendant).**

5.04 GHE has been damaged and continues to be damaged by reason of Defendant's breach of his fiduciary duty in an amount not readily susceptible to calculation. **(Denied by**

**Defendant)**

6.02 Defendant has published in his World Wide Web site the following statement, "You will here (sic) lots of things regarding why I am not on the show, but I can tell you directly and simply; I did not leave the show by choice, but to the contrary, I have been forced out by the unlawful greed to which I cannot fully comment at this time due to pending litigation." This statement referred to the television show, "Cheaters", was false when published, was made to deter "Cheaters" fans from watching the television show, and was made solely to force Goldstein and Cheaters to acknowledge and pay Defendant for his claim to the copyrights hereinafter recited. The statement, and other like it, have damaged Goldstein and Cheaters in an amount not readily susceptible to calculation. **(Defendant admitted that he made the statement, but denied the remaining allegations).**

These allegations show that the transaction or series of transactions involved in both suits began in April, 1998, and ended when Plaintiffs filed the Federal Action. Likewise, the transactional relationships were those between each of the Plaintiffs and Defendant. Lastly, the transactional facts dealt with the ownership, development and use of the Cheater's television program. In comparison, Defendant, in Plaintiff's First Amended Original Petition in the State Court, states:

17. On or about August 25, 1999, but for reasons unknown by Habeeb, expressly effective June 1, 1999, Habeeb, Goldstein and GHE entered into a new shareholder's agreement (the "Second Shareholder's Agreement"). The stated purpose of entering into this new Shareholder's was to reflect a change of ownership structure in GHE from 50-50 to 70-30 in favor of Goldstein. As set for more fully below, Goldstein was able to cause Habeeb to acquiesce to this arrangement by threatening to cut of financing and terminate the License Agreement thereby preventing Habeeb from receiving any financial rewards from the project. **(Compare 3.04, 3.05 and 3.10 above).**

22. Around this time, Goldstein formed the limited partnership, Cheater's, Ltd., ostensibly to raise funds for the project. As the date for the deadlines for airing the show in Germany approached, and financial potential appeared likely, Goldstein presented Habeeb with the Second Shareholder's Agreement and demanded Habeeb sign it. Goldstein threatened to shut down the entire project and terminate all funding for Cheaters if Habeeb did not yield to his demands that Goldstein own 90% of the stock in GHE. Habeeb at first refused to give in to Goldstein's demands by ultimately signed the Second

Shareholder's Agreement, which increased Goldstein's ownership share to seventy percent (70%) and decreased Habeeb's ownership to thirty percent (30%).**(Compare 3.10).**

27. On or about October 27, 2000, Habeeb, Goldstein, McCalmont, and GHM executed another Shareholders Agreement (the GHM Shareholders Agreement"). The GHM Shareholders Agreement provided, among other things, that Goldstein, McCalmont and Habeeb were to be on the Board of Directors of GHM, and that Goldstein was to be the President and Secretary. **(Compare 3.10).**

30. On or about November 28, 2001, Goldstein sent Habeeb an email, in which Goldstein purported to revoke the License Agreement to GHM. The purported revocation was not based on any of the authorized events of revocation or termination under the License Agreement. **(Compare 3.09 above).**

36. Habeeb had not been paid his hosting fees for the second season.... **(Compare 3.11 above).**

37. During the course of the third season, Goldstein "fired" Habeeb as host...**(Compare 3.11 above).**

38. ...Without any legal authority or justification Goldstein attempted to oust GHM's as the General Partner of Cheater's,

Ltd. and in its place, make himself and/or one of his entities the General Partner...**(Compare 3.04, 3.05 and 3.05 above).**

39. After unlawfully attempting to oust GHM as the General Partner of Cheaters, Ltd. and placing himself in that position, Goldstein entered into another licensing agreement for the <u>Cheaters project</u> (emphasis added). This time, Goldstein licensed the rights directly to the partnership itself under new terms and conditions.**(Compare 3.04, 3.05 and 3.09 above).**

These allegations show that the "common nucleus of facts" in both cases were those facts related to the development and production of a television video tape series known as "Cheaters" and to the relationship of the parties toward that common purpose between April, 1998, and the day the Federal Action was filed.

2.04 **Public policy.** Oddly enough, Defendant, in his Response to Plaintiffs' Motion for Summary judgment filed herein, provides the Court with its most compelling reason for granting the injunctive relief sought herein. There, at page 4, paragraph 11, he states:

> On or about April 12, 2004, these Plaintiffs sought a summary judgment in the State Action on the identical basis that they seek by this Motion For Summary Judgment. Plaintiffs' motion for summary judgment was heard by the state court on May 17, 2004, and such motion was denied...

As Judge Cunningham stated in *Dow II, page 38*, "The law cannot tolerate the risk that even

one state court might carve out some exception to *res judicata* and collateral estoppel and allow the action before it to proceed. 'A single positive trumps all the negatives. Even if just one judge in ten [fails to find preclusion], then . . . the probability that at least one will [allow a state action to proceed] is 65% (0.910 = 0.349).'" Quoting from *In re Bridgestone/Firestone, Inc.*, 333 F.3d 763, 766-767 (7th Cir. 2003).

### III

### Defendant's Claims Against Sorenson

3.01  The issue of whether Sorenson is entitled to benefit from the application of *res judicata* to the facts of this case is one of first impression. Plaintiffs have found no reported case that either favors such a proposition or denies it. Therefore, Plaintiffs suggest that logic, as applied to the facts of this lawsuit and its predecessor Federal Action, dictates an extension of the public policy that founds the *res judicata* doctrine.

3.02  In *Southwest Airlines Co. V. Texas Internat'l Airlines*, 546 F.2d 84 (5th Cir. 1977) the 5th Circuit identified public policies at issue: "The principle of *res judicata* serves several policies important to our judicial system. By declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty in turn generates public respect for the courts. By preventing relitigation of issues, res judicata conserves judicial time and resources. It also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit, and avoidance of conflicting rights and duties from inconsistent judgments. *Ibid*, p. 94. In *Southwest*, pp 98-99, the court could not find either privity or virtual representation between Plaintiffs. It nevertheless, found sufficient

identity between the City of Dallas (the prior judgment holder) and Southwest Airlines (the party seeking the to enforce the prior judgment) so as to apply *res judicata*.

3.03 Defendant alleges that (1) Sorenson breached his fiduciary duty to his client, GHM, by representing both GHM and Goldstein in the Federal Action, and (2) by sending a letter dated February 13, 2003, to the limited partners in Cheaters, Ltd. Both of these actions took place before the Defendant filed his answer in the Federal Action on March 3, 2003. It is undeniable that Sorenson represented both Goldstein and GHM in the Federal Action, and, in fact, GHM was a named beneficiary of the Agreed Judgment signed by the Defendant and entered in the Federal Action three weeks after Defendant filed the State Court Action. GHM accepted those benefits, and, if Defendant is to be treated only in his representative capacity for GHM, now seeks to sue Sorenson for actions involved in or arising out of that representation. In Texas, a party may not voluntarily accept the benefits of a judgment and subsequently attack it. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950); *Aycock v. Pannill,* 853 S.W.2d 161, 163 (Tex.App.-Eastland 1993, writ denied). The alternative, when applied to this case, is to permit a disgruntled shareholder who loses a lawsuit filed against him by the corporation in which he owns shares to never say a word until he loses. If and when he does lose, he is permitted to sue the attorney who represented the plaintiff corporation, or the other shareholders and officers of the corporation, so as to recover what he lost in the original suit. That result is neither just nor equitable; nor does it have any precedent in law.

**Prayer.** Plaintiffs request that the Court enter summary judgment permanently enjoining Defendant from pursuing the State Court Action, or any of Defendant's claims stated in the State Court Action in any other court.

Respectfully submitted,

Timothy W. Sorenson, Esquire
State Bar No.18848400

1717 Main Street, Suite 5500
Dallas, Texas 75201
Ph: (214) 698-8599
Fax: (214) 698-5999
Attorney for Defendant, Robert N. Goldstein

JOINED BY:

Norton Rosenthal
Texas Bar No. 17281520
1717 Main Street, Suite 5500
Dallas, Texas 75201
Ph: (214) 743-4150
Fax: (214) 743-4151
Attorney for Plaintiff, Cheaters, Ltd.

Paul M. Hood
Texas Bar No. 09943440
1717 Main Street, Suite 5500
Dallas, Texas 75201
Ph: (214) 373-3214
Fax: (214) 373-0843
Attorney for Plaintiff,
Goldstein/Habeeb/McCalmont Entertainment, Inc.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment has been served by hand delivery or certified mail, return receipt requested, upon all counsel of record in the above-styled and numbered cause in accordance with Rule 5, Federal Rules of Civil Procedure, on this 30th day of June, 2004

_____
Timothy W. Sorenson